UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

MICHELLE P.,

            Plaintiff,

    -v-

ANDREW SAUL
Commissioner of Social Security,

            Defendant.

1:19-CV-01046-MJR
DECISION AND ORDER

---

Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 20).

Plaintiff Michelle P.[1] ("plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying her Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, plaintiff's motion (Dkt. No. 11) is denied and defendant's motion (Dkt. No. 14) is granted.

## BACKGROUND[2]

Plaintiff filed applications for DIB and SSI on April 25, 2016 alleging disability since that date due to fibromyalgia, chronic pain, arthritis, depression, and anxiety. (*See* Tr.

---

[1] In accordance with the District's November 18, 2020 Standing Order regarding the identification of non-government parties in social security opinions, plaintiff is identified solely by first name and last initial.
[2] The Court presumes the parties' familiarity with the plaintiff's medical history, which is summarized in the moving papers.

178-190, 246).³ Plaintiff's disability benefits application was initially denied on August 20, 2016.⁴ (Tr. 113-14). Plaintiff sought review of the determination, and a hearing was held before Administrative Law Judge ("ALJ") Lynette Gohr⁵ on July 16, 2018. (Tr. 31-66). ALJ Gohr heard testimony from plaintiff, who was represented by counsel, as well as from Jay Steinbrenner, an impartial vocational expert ("VE"). (*Id.*). On September 5, 2018, ALJ Gohr issued a decision that plaintiff was not disabled under the Act. (Tr. 12-30). Plaintiff timely sought review of the decision by the Appeals Council and her request was denied. (Tr. 1-6). The ALJ's September 5, 2018 denial of benefits then became the Commissioner's final determination, and the instant lawsuit followed.

Born on March 3, 1982, plaintiff was 34 years old on the alleged disability onset date and 36 years old on the date of the hearing. (Tr. 24, 35-36, 178, 231, 247). Plaintiff is able to communicate in English, has at least a high school education, and previously worked as a cashier and a teller. (Tr. 25).

## DISCUSSION

I. *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks

---

³ References to "Tr." are to the administrative record in this case.
⁴ Plaintiff previously applied for DIB and SSI and was denied benefits at the initial level on March 25, 2015. (Tr. 67-68, 84).
⁵ The cover page of the hearing transcript erroneously lists Jeremy G. Eldred as the presiding Administration Law Judge, but the rest of record indicates that ALJ Lynette Gohr heard and decided the matter. (Compare Tr. 31 to Tr. 14, 26, 33).

2

and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II. *Standards for Determining "Disability" Under the Act*

A "disability" is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to

result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §423(d)(2)(A). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §404.1520(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §404.1520(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §404.1520(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."

4

*Id.* As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.* Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §404.1520(d). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.*

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §404.1520(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §404.1545(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §404.1520(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §404.1520(g)(1). If the claimant can adjust to other work, he or she is not disabled. *Id.*

If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.*

The burden through steps one through four described above rests on the claimant. If the claimant carries their burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

III. *The ALJ's Decision*

The ALJ found that plaintiff met the insured status requirements of the Act through September 30, 2020. (Tr. 17). The ALJ then followed the required five-step analysis for evaluating plaintiff's claim. Under step one, the ALJ found that plaintiff did not engage in substantial gainful activity since the alleged onset date of April 25, 2016. (Tr. 18). At step two, the ALJ found that plaintiff had the following severe impairments: (1) fibromyalgia; (2) lumbar degenerative disc disease; (3) depressive disorder and anxiety disorder; (4) bilateral carpal tunnel syndrome; (4) and obesity. (Tr. 18). At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (*Id.*). Before proceeding to step four, the ALJ assessed plaintiff's RFC as follows:

> [T]he [plaintiff] has the residual functional capacity to perform sedentary work at defined in 20 CFR 404.1567(a) and 416.967(a) except she can occasionally climb ramps and stairs but never climb ladders[,] ropes and scaffolds; occasionally stoop, kneel, crouch and crawl; frequently reach overhead with the bilateral upper extremities; frequently push and pull with the bilateral upper extremities; frequently finger and handle with the bilateral upper extremities; she must avoid concentrated exposure to extreme cold; perform no repetitive neck movements is [sic] defined as movements that require essentially the same, repeated neck motions that must be completed in a regular, repetitive sequence without an opportunity for a break "such as on a production line, where an individual would be required to turn her neck to identify an object coming down the line, turn it again to manipulate the object, and turn it once more to send the object on its way["]; limited to simple routine tasks; limited to simple work-related[d] decisions; minimal changes

6

>in work routines and processes; occasionally interact with supervisors, coworkers and the public; able to work in a low stress work environment defined as including simple instructions and tasks, no supervisory duties, no independent decision-making, no strict production quota, minimal changes in work routine and processes.

(Tr. 20).

Proceeding to step four, the ALJ reviewed the vocational information and the testimony of VE Steinbrenner to conclude that plaintiff is unable to perform past relevant work given the limitations set forth in her residual functional capacity. (Tr. 24). The ALJ noted that if the plaintiff had the residual functional capacity to perform the full range of sedentary work, a finding of "not disabled" would be directed. (Tr. 25-26). However, the ALJ assessed that plaintiff's ability to perform sedentary work is compromised by additional limitations. (*Id.*) Proceeding to step five, and after considering testimony from VE Steinbrenner in addition to plaintiff's age, education, work experience, and RFC, the ALJ found that there are other jobs that exist in significant numbers in the national economy that plaintiff could perform, such as table worker, semiconductor bonder, and surveillance system monitor. (*Id.*). Accordingly, the ALJ found that plaintiff had not been under a disability within the meaning of the Act from April 25, 2016, the alleged onset date, through September 5, 2018, the date of the decision. (Tr. 26).

IV.   *Plaintiff's Challenges*

Plaintiff makes two arguments to support her assertion that this decision is not supported by substantial evidence. First, she argues that the ALJ failed to properly weigh the opinion provided by Ryan Mayle, a physician assistant who treated plaintiff. Second, she argues that the ALJ improperly based the RFC assessment on her own lay opinion. For the reasons that follow, neither argument succeeds.

7

### a. The ALJ Properly Considered the Opinion of Plaintiff's Treating Physician Assistant

The record shows that plaintiff received regular primary care treatment at Westfield Family Physicians beginning prior to 2014 and continuing through April 2018. (Tr. 355-81, 489-557, 577-787). Ryan Mayle, PA-C, one of the providers who treated plaintiff at Westfield Family Physicians, submitted two Medical Source Statements dated April 10, 2018 addressing plaintiff's fibromyalgia and lumbar spine impairments. (Tr. 806-15). In rendering her decision, the ALJ reviewed PA Mayle's opinions, as well as the opinion of Michael Rosenberg, M.D., a consultative internal medicine examiner. (Tr. 564-67).[6]

PA Mayle opined that plaintiff was limited to sitting 25 minutes at a time, could sit or stand for less than 2 hours in an 8-hour working day, would need to walk every 10-15 minutes to alleviate her pain and discomfort, and, if sitting for a prolonged period, would need to elevate her legs for up to 50% of the day. (Tr. 808-09, 813-14). PA Mayle further stated that plaintiff had significant bilateral limitations to reaching, handling, and fingering, to the extent that she could only grasp, turn, and twist objects 10% of the time, perform fine manipulations with her fingers 5% of the time, reach in front of her body 25% of the time, and reach overhead 10% of the time. (Tr. 810). The ALJ gave "very little weight" to Mayle's opinion. (Tr. 23).

In arguing that the ALJ failed to give proper weight to the PA Mayle's opinion, plaintiff acknowledges that Mayle is not considered an "acceptable medical source" of opinion evidence under the regulations. *See* 20 C.F.R. §404.1502(a)(7) (excluding physician assistants as "acceptable medical sources" for claims filed prior to March 27,

---

[6] These two medical source statements gave opinions on plaintiff's physical impairments. The record also contained an opinion relative to plaintiff's mental impairments rendered by Kristina Luna, Psy. D., a consultative psychiatric evaluator. (Tr. 558). Plaintiff's has not raised any issue regarding the ALJ's evaluation of this opinion.

8

2017). Although physician assistants are not included in the list of acceptable medical sources for claims filed prior to March 27, 2017, the ALJ should still consider information from "other sources," such as this, which may help to understand how the claimant's impairment affects her ability to work. *See Krach v. Colvin*, 13-CV-1089, 2014 U.S. Dist. LEXIS 146922, at *15 (N.D.N.Y. Aug. 26, 2014). While information from "other sources" cannot establish the existence of a medically determinable impairment, such information may be based on special knowledge of the individual and may provide insight into the severity of the impairment and how it affects the individual's ability to function. *See* SSR 06-03p, 2006 SSR LEXIS 5, at *5 (SSA Aug. 9, 2006). The regulations further explain:

> Although we will consider [opinions from non-acceptable sources] using the same factors as listed in paragraph (c)(1) through (c)(6) in this section, not every factor for weighing opinion evidence will apply in every case because the evaluation of an opinion from a medical source who is not an acceptable medical source or from a nonmedical source depends on the particular facts in each case.

20 C.F.R. §404.1527(f)(1); §416.927(f)(1).[7] Those factors include: (1) how long the source has known and how frequently the source has seen the individual; (2) how consistent the opinion is with other evidence; (3) the degree to which the source presents relevant evidence to support an opinion; (4) how well the source explains the opinion; (5) whether the source has a specialty or area of expertise related to the individual's impairment(s); and (6) any other factors that tend to support or refute the opinion. *See* 2006 SSR LEXIS 5, at *11; *see also Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). In some instances, "[b]ased on the particular facts of a case, such as length of treatment, it may be appropriate for an ALJ to give more weight to a non-acceptable medical source

---

[7] This claim was filed before March 27, 2017, therefore 20 C.F.R. §§ 404.1527 and 416.927 are applicable.

than a treating physician." *Anderson v. Astrue*, No. 07-CV-4969, 2009 U.S. Dist. LEXIS 77602, at *27 (E.D.N.Y. Aug. 28, 2009).

However, while the ALJ is certainly free to consider the opinions of these "other sources" in making his overall assessment of a claimant's impairments and residual abilities, those opinions do not demand the same deference as those of a treating physician. *Genier v. Astrue*, 298 F. App'x 105, 108 (2d Cir. 2008) (summary order). The ALJ may conclude that the opinion of a physician assistant is not entitled to any weight but must explain that decision. *See Krach*, 2014 U.S. Dist. LEXIS 146922, at *15.

Here, the ALJ was entitled to assign little weight to PA Mayle's opinion that plaintiff had extensive physical limitations, and the ALJ clearly explained why she felt Mayle's opinion was not supported by the record. *See Piatt v. Colvin*, 80 F. Supp. 3d 480, 493 (W.D.N.Y. 2015) (finding no error in ALJ's explanation for giving little weight to "other source" opinion because it was not supported by the record). The ALJ did not discredit this opinion merely because it was provided by a non-acceptable medical source. *C.f. Kelly v. Astrue*, 09-CV-1359, 2011 U.S. Dist. LEXIS 21009, at *16-17 (N.D.N.Y. Jan. 18, 2011), *adopted by* 2011 U.S. Dist. LEXIS 20965 (Mar. 2, 2011) (holding that ALJ was not free to disregard an assessment by a social worker on that basis alone). In fact, the ALJ explained that Mayle's opinion "is not supported by the evidence of record which shows very few abnormal findings during physical examinations of the claimant." (Tr. 23). She further described that plaintiff's primary care physician and pain specialist noted normal gait, normal posture, intact motor strength, intact reflexes, as well as normal mood. (*Id.*). She noted that Mayle's finding that plaintiff needed to keep her feet and legs elevated is contrasted by testimony that the plaintiff is able to travel and hike. (*Id.*) Lastly, observing

10

that the record shows plaintiff had attended all medical visits and was able to travel on regular occasions, the ALJ found no evidence supporting Mayle's conclusion that plaintiff would be absent from work four days or more per month. (*Id.*). By contrast, plaintiff points to several instances in the medical record from Westfield Family Physicians, mostly regarding plaintiff's complaints of pain, which she believes controvert the ALJ's conclusion of "few abnormal findings" during physical examination. None of these points, individually or collectively, are persuasive. This Court declines to disrupt the ALJ's assessment of the objective evidence and defers to the ALJ's right to resolve conflicts in the record. *See Veino, supra,* 312 F.3d at 588.

The Court also rejects plaintiff's assertion that the ALJ should have considered the length and frequency with which PA Mayle treated plaintiff when deciding what weight to assign his opinion. The ALJ did not explicitly state her consideration of the length or extent of the treatment relationship with this "other source," but the regulations do not require her do so. In fact, the case cited by plaintiff in support of this proposition states, "in weighing opinion evidence from non-medical sources, ALJs *may* consider" the various regulatory factors, including how long the source has known and how frequently the source has seen the individual. *See Fountain v. Berryhill,* 17-CV-6172, 2018 U.S. Dist. LEXIS 166713, at *14 (W.D.N.Y. Sept. 27, 2018) (emphasis added).[8] Here, the ALJ cited other factors she found most relevant towards weighing the opinion and, as such, her explanation was sufficient under the law.

---

[8] *Fountain v. Berryhill* is further distinguishable on the basis that the Court found the opinion of plaintiff's treating licensed social worker to be consistent with other medical sources such as plaintiff's treating physician and that this opinion was dismissed for the same erroneous reasons as was the treating physician's opinion. *See* 2018 U.S. Dist. LEXIS 166713 at *14-15. That is simply not the case here.

Accordingly, the Court finds that the ALJ committed no error in assigning little weight to PA Mayle's "other source" opinion.

### b. The RFC Assessment is Supported by Substantial Evidence

Plaintiff also argues that the residual functional capacity determination is not supported by substantial evidence because it is based on the ALJ's own lay opinion. The Court disagrees.

Although the ALJ's conclusion about the plaintiff's RFC may not "perfectly correspond" with any of the opinions of medical sources cited in her decision, she is entitled to weigh all of the evidence available to make an RFC finding that is consistent with the record as a whole. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order); *see also O'Neil v. Colvin*, No. 13-CV-575, 2014 U.S. Dist. LEXIS 153872, at *15 (W.D.N.Y. Oct. 30, 2014) ("the ALJ's RFC finding need not track any one medical opinion"). However, "an ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018); *see also Goble v. Colvin*, 15-CV-6302, 2016 U.S. Dist. LEXIS 74637, at *20 (W.D.N.Y. 2016) ("the ALJ's RFC determination must be supported by competent medical opinion; the ALJ is not free to form his own medical opinion based on the raw medical evidence"). Where the medical findings in the record "merely diagnose [the] claimant's exertional impairments and do not relate these diagnoses to specific residual functional capabilities such as those set out in 20 C.F.R. § 404.1567[(a)-(e)] ... [the Commissioner may not] make the connection himself." *Kneeple*

*v. Colvin*, 14-CV-33, 2015 U.S. Dist. LEXIS 157890, at *17-18 (W.D.N.Y. Nov. 12, 2015) (citations omitted).

Here, the medical source statement which the ALJ gave the most weight to was that of Dr. Rosenberg; affording it "some weight." (Tr. 23). Dr. Rosenberg opined that claimant has "minimal to mild restrictions" to carrying heavy objects, overhead activity, activity involving pushing, pulling, reaching, or repetitive use of her arms. (Tr. 567). He further assessed "mild to moderate restrictions" for activity requiring squatting and kneeling, bending, and heavy lifting, and activity that requires twisting and turning of the cervical neck. (*Id.*). Dr. Rosenberg also opined that plaintiff has "mild to moderate restrictions" for activity that requires prolonged and repetitive use of the hands second to her mild to moderate bilateral MCP [metacarpophalangeal] pain and bilateral wrist pain." (*Id.*).

While the ALJ did not give controlling weight to Dr. Rosenberg's opinion, the RFC determination was largely consistent with his opinion and took into account most of his findings. See *O'Neil v. Colvin*, 2014 U.S. Dist. LEXIS 153872, at *14. The ALJ took issue only with Dr. Rosenberg's assessment of "minimal to mild restrictions in carry heavy objects," finding that it was not entirely consistent with the testimonial evidence because it did not reflect the extent of plaintiff's difficulty lifting and carrying heavy weights as a result of her fibromyalgia. (Tr. 23). Accordingly, the ALJ gave additional lifting and carrying restrictions in her RFC assessment. The balance of Dr. Rosenberg's opinion is directly reflected in the significant restrictions of the RFC. For example, where Dr. Rosenberg opined that plaintiff had "mild to moderate" restrictions for activity requiring twisting and turning of the cervical neck because of neck pain, the RFC provided that plaintiff could

13

not perform repetitive neck movements, such as on a production line. (Tr. 20, 23). Overall, Dr. Rosenberg's opinion related plaintiff's diagnoses and exertional impairments to specific functional capacities, including pulling, pushing, reaching, squatting, kneeling, bending, and use of hands, which the ALJ then used to formulate the RFC. The ALJ did not reject Dr. Rosenberg's opinions or insert her own lay analysis of plaintiff's limitations. *C.f. Jordan v. Berryhill*, 17-CV-509, 2018 U.S. Dist. LEXIS 195216, at *5-9 (W.D.N.Y. Nov. 15, 2018) (finding that the ALJ improperly based RFC on her lay analysis because she failed to tether her RFC to the non-stale medical opinions or statements from plaintiff). Instead, the ALJ's RFC finding here "bears a clear relation" to Dr. Rosenberg's opinion. *See Ippolito v. Comm'r of Soc. Sec.*, 18-CV-403, 2019 U.S. Dist. LEXIS 140825, at *9 (W.D.N.Y. Aug. 19, 2019) (finding reversible error where the sole medical opinion did not correlate with the RFC assessment or specify the portion of the opinion credited).

Plaintiff particularly takes issue with the RFC finding that she can only "frequently finger and handle with the bilateral upper extremities." (Tr. 23). She submits that this limitation does not correspond to Dr. Rosenberg's opinion nor the record as a whole. Dr. Rosenberg opined that plaintiff has "mild to moderate restrictions for activity that requires prolonged and repetitive use of the hands second to her mild to moderate bilateral MCP pain and bilateral wrist pain." (Tr. 567). Dr. Rosenberg's exam findings indicated that plaintiff's hand and finger dexterity is intact bilaterally with "4/5" grip strength. (Tr. 566). The medical notes from Tri State Pain Institute in December 2014 indicate that plaintiff reported pain and numbness in her hands and that she had to quit her job as a bank teller because of pain associated with repetitive movement with her hands. (Tr. 397-99). The treatment notes of PA Mayle from March 24, 2017 indicate that plaintiff reported "swollen

hands/feet" that was "better with a diuretic." (Tr. 667). The Court finds that the RFC reflects both Dr. Rosenberg's opinion and the medical record as a whole. It restricts plaintiff to frequent, as opposed to constant, use of her hands and fingers to accommodate for this impairment. Plaintiff provides no caselaw showing that this RFC specification is inconsistent with a functional assessment, like that of Dr. Rosenberg, of "mild to moderate" impairment to prolonged and repetitive use of hands. Further, "the fact that an RFC assessment does not correspond exactly to a medical expert's opinion in the record does not mean that the RFC assessment is 'just made up.'" *Wilson v. Colvin*, 6:16-CV-06509, 2017 U.S. Dist. LEXIS 102104, at *14 (W.D.N.Y June 30, 2017).

Plaintiff believes that the RFC finding is largely inconsistent with Dr. Rosenberg's opinion. She thus asserts that, as an uncontradicted medical opinion, there must be "overwhelmingly compelling evidence in order to overcome it." *See Giddings v. Astrue*, 333 Fed. App'x 649, 652 (2d Cir. 2009) (quoting *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008)) (remanding where the ALJ failed to provide the compelling critique needed to overcome the uncontradicted medical opinion of a consultative examiner). For the reasons explained above, the Court does not find that the RFC assessment was inconsistent with Dr. Rosenberg's opinion, except relative to the more conservative lifting and carrying restriction, for which the ALJ explained that she credited the hearing testimony. *See Baltes v. Berryhill*, 17-CV-211, 2018 U.S. Dist. LEXIS 195209, at *8 (W.D.N.Y. Nov. 15, 2018) (requiring the ALJ to identify the evidence of the record that he relied on in assessing a functional limitation not imposed by the medical source). Further, as discussed above, it was within the ALJ's purview to give little weight to PA Mayle's opinion assessing more significant restrictions to plaintiff's functioning, particularly

regarding sitting, standing, and walking. There was no other acceptable medical source opinion that offered a contrary assessment of plaintiff's functional limitations. The ALJ did not substitute her own lay opinion for the opinion of the examining physician, and the substantial evidence of the record supports the ALJ's decision that plaintiff retained the residual functional capacity to perform sedentary work with additional restrictions. See *O'Neil*, 2014 U.S. Dist. LEXIS 153872, at *16.

Much of the caselaw cited by plaintiff is inapposite in that it addresses instances where an ALJ drew functional capacity conclusions from raw data, test results, treatment notes, or bare medical findings and did not link those findings to the RFC. See *Starr v. Saul*, 18-CV-241, 2019 U.S. Dist. LEXIS 144162 (W.D.N.Y. Aug. 23, 2019); *Caswell v. Berryhilll,* 17-CV-6133, 2018 U.S. Dist. LEXIS 158079 (W.D.N.Y. Sept. 17, 2018); *Trippett v. Comm'r of Soc. Sec.*, 16-CV-908, 2018 U.S. Dist. LEXIS 153053 (W.D.N.Y. Sept. 7, 2018); *Perkins v. Berryhill*, 17-CV-6327, 2018 U.S. Dist. LEXIS 115388 (W.D.N.Y. July 11, 2018); *Williams v. Berryhill*, 16-CV-283, 2017 U.S. Dist. LEXIS 58115 (W.D.N.Y. Apr. 17, 2017). Here, the ALJ did not work from bare medical findings and she tethered her RFC findings to Dr. Rosenberg's functional assessments by giving weight to his opinion.

Plaintiff's further argument the ALJ needed to engage in a function-by-function discussion is also without merit. When the ALJ does not rely on a medical opinion to formulate the RFC, he must "provide a function-by-function analysis of [the claimant]'s work-related capacity." *Perkins v. Berryhill*, 17-CV-6327, 2018 U.S. Dist. LEXIS 115388, at *9 (July 10, 2018) (quoting *Ford v. Colvin*, 12-CV-301, 2013 U.S. Dist. LEXIS 126353, 2013 WL 4718615, at *8 (W.D.N.Y. Sept. 3, 2013)); see also *Matejka v. Barnhart*, 386 F. Supp. 2d 198, 208 (W.D.N.Y. 2005) (explaining that an assessment of RFC on a "function-

by-function basis" involves the consideration of exertional capacity in seven areas: sitting, standing, walking, lifting, carrying, pushing, and pulling). Here, there was clear reliance on a medical opinion, therefore the ALJ was not obligated to perform a more detailed function-by-function analysis.

In sum, this Court holds that the ALJ's decision was based on proper application of the law and is supported by substantial evidence.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (Dkt. No. 11) is denied and Commissioner's motion for judgment on the pleadings (Dkt. No. 14) is granted.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated:    February 25, 2021
          Buffalo, New York

_____
MICHAEL J. ROEMER
United States Magistrate Judge